**Rex J. Roldan, Esquire (RR7961)**
Washington Professional Campus
900 Route 168, Suite I-4
Turnersville, New Jersey 08012
(856) 232-1425   Fax (856) 232-1025
Attorney for Debtors

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>MARK R. TUCCI and MARY ANNE P. TUCCI,<br><br>Debtors | Case No.: 14-26409 (JNP)<br><br>Chapter 13 |

**CERTIFICATION OF DEBTORS IN SUPPORT OF MOTION TO APPROVE
MORTGAGE LIEN MODIFICATION AGREEMENT**

MARK R. TUCCI and MARY ANNE P. TUCCI hereby certify as follows:

1.  We are the debtors in the above-captioned case. We make this Certification in support of our application to approve the mortgage loan modification with creditor, Select Portfolio Servicing, Inc. (hereinafter referred to sometimes as "SPS").

2.  We filed for relief under Chapter 13 of the Bankruptcy Code on August 8, 2014.

3.  In or around October, 1998, we entered into a Note and Mortgage for the purchase of our residence located at 102 Summit Avenue, Laurel Springs, New Jersey 08021.

4.  We have been able to re-negotiate the Note and Mortgage with SPS. Attached hereto is a copy of the Lien Modification Agreement. According to said agreement, the modified mortgage principal balance will be $130,000.00. The maturity date of the mortgage will be February 1, 2054. The new interest rate will be 3.750%. The total monthly payment, <u>not</u> including real estate taxes and insurance, will be $530.10.

5. We seek, through the filing of this motion, a Court order allowing us to enter into this mortgage loan modification as such modification may constitute an extension of credit. If it becomes necessary to record certain documents or take other measures which implicate the automatic stay, we respectfully request that this Court allow limited stay relief for the purpose of allowing the action incident to modification of the mortgage loan.

6. We believe that it is in our best interest to enter into this Lien Modification Agreement.

7. We respectfully request, therefore, that the Court approve the Lien Modification Agreement with Select Portfolio Servicing, Inc..

We hereby certify that the foregoing statements made by us are true. We are aware that if any of the foregoing statements made by us is wilfully false, we are subject to punishment.

| /s/ Mark R. Tucci | /s/ Mary Anne P. Tucci |
|---|---|
| MARK R. TUCCI, Debtor | MARY ANNE P. TUCCI, Debtor |
| Dated: September 1, 2015 | Dated: September 1, 2015 |

**LIEN MODIFICATION AGREEMENT**

This Lien Modification Agreement ("Agreement") is effective April 1, 2015, between MARK TUCCI and MARY TUCCI, ("Property Owner") and Select Portfolio Servicing, Inc., acting on behalf of the lien holder, ("Lien Holder"). If Property Owner's representations and covenants in Section 1 continue to be true in all material respects, then this Agreement will amend and supplement, as set forth in Section 2, the lien documents dated October 2, 1998, securing the original principal sum of $61,500.00 ("Lien Documents"), which encumber the real and personal property described in the Lien Documents (defined in the Lien Documents as the "Property"), known as

    102 SUMMIT AVENUE
    LAUREL SPRINGS, NJ 08021

*Lien Holder acknowledges that the mortgage loan related to the Property has been discharged. Even though the Property Owner's personal liability on the note is discharged, the terms of the Lien Documents remain in effect. Lien Holder continues to have an enforceable lien on the Property. This lien modification agreement does not constitute a reaffirmation of debt under United States Code Title 11.*

1. <u>Property Owner Representations and Covenants.</u> Property Owner certifies, represents, covenants, and agrees as follows:

   a. Property Owner is experiencing a financial hardship, and as a result, (i) is in default under the Lien or default is imminent, and (ii) Property Owner does not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future.

   b. There has been no impermissible change in the ownership of the Property since Property Owner signed the Lien.

   c. If requested by Lender, Property Owner has provided documentation for all income that they receive.

   d. All documents and information Property Owner has provided to Lender in connection with this Agreement, including the documents and information regarding eligibility for this Agreement, are complete, true and correct.

   e. Property Owner has made or will make all payments required under a trial modification plan or lien workout plan, if applicable.

   f. The property is neither in a state of disrepair, nor condemned.

   g. Property Owner is not a party to any litigation involving the Lien Documents, except to the extent the Property Owner may be a defendant in a foreclosure action.

2. The Modification. If Property Owner's representations and covenants in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Lien Documents will automatically become modified on April 1, 2015 (the "Modification Effective Date") and all late charges that remain unpaid will be waived. Property Owner understands that if they fail to make any payments as a precondition to this modification under a workout plan or trial modification plan, this modification will not take effect. The first modified payment will be due on May 1, 2015.

   a. The Maturity Date will be: February 1, 2054.

   b. The modified principal balance to satisfy the Lien will include all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, collectively, Unpaid Amounts) less any amounts paid to the Lien Holder but not previously credited to the account associated with the Lien Documents and less Principal in the amount of $19,898.19 which has been forgiven. The new principal balance to satisfy the Lien will be $130,000.00 (the "New Principal Balance"). Property Owner understands that by agreeing to add the Unpaid Amounts to the outstanding balance to satisfy the Lien, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. Property Owner also understands that this means interest will now accrue on the unpaid interest that is added to the outstanding balance to satisfy the Lien, which would not happen without this Agreement.

   c. Interest at the rate of 3.750% will begin to accrue on the Interest Bearing Principal Balance as of April 1, 2015 and the first new monthly payment on the Interest Bearing Principal Balance will be due on May 1, 2015. The payment schedule for the modified Lien Documents is as follows:





0008154800000305071O

| Months | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| 1-466 | 3.750% | N/A | $530.10 | $0.00 | $530.10, may adjust periodically | May 1, 2015 | 466 |

The above terms in this Section 2.c shall supersede any provisions to the contrary in the Lien Documents, including but not limited to, provisions for an adjustable, step or simple interest rate. Interest will be charged on unpaid principal until the full amount of the New Principal Balance has been paid. Property Owner will pay interest at a yearly rate of 3.750%.

  d.  The monthly payment under this modification does not include the collection of funds for property taxes and homeowner's insurance (non-escrowed). Therefore Property Owner is responsible for the payment of taxes and insurance as required under the Lien Documents. If Property Owner fails to pay property taxes, the taxing entity may sell the property and Property Owner could lose their home. If Property Owner fails to pay homeowner's insurance, the property may not be protected from loss or damage. Property Owner is obligated under the Lien Documents to keep the home properly insured and to pay taxes on time.

3. Other Agreements. Property Owner and Lien Holder also agree to the following:

  a.  This Agreement shall supersede any modification, forbearance, trial period plan, or other workout plan that Property Owner previously entered into with Lien Holder.

  b.  The Lien Documents, as modified by this Agreement, are duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

  c.  All terms of the Lien Documents, except as expressly modified by this Agreement, or by the U.S. Bankruptcy Code, remain in full force and effect. Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the terms contained in the Lien Documents.

  d.  All covenants, agreements, and requirements of the Lien Documents, including all requirements to make payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments under the Lien Documents remain in full force and effect.

  e.  If any document is lost, misplaced, misstated or inaccurately reflects the true and correct terms and conditions of the Lien Documents as amended by this Agreement, within ten (10) days after receipt of the Lien Holder's request, Property Owner will execute, acknowledge, initial, and deliver to the Lien Holder any documentation the Lien Holder deems necessary to replace or correct the lost, misplaced, misstated or inaccurate document(s). If Property Owner fails to do so, Property Owner will be liable for any and all loss or damage which the Lien Holder reasonably sustains as a result of Property Owner's failure. At Lien Holder's option, this Agreement will be void and of no legal effect upon notice of such loss, misplacement, misstatement, or inaccuracy. If Property Owner elects not to sign any such corrective documentation, the terms of the original Lien Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and Property Owner will not be eligible for a modification.

  f.  The mortgage insurance premiums, if applicable, may increase as a result of the capitalization, which will result in a higher total monthly payment. Furthermore, the date on which Property Owner may request cancellation of mortgage insurance may change as a result of the New Principal Balance.

  g.  As of the Modification Effective Date, notwithstanding any other provision of the Lien Documents, Property Owner agrees as follows: If all or any part of the Property or any interest in it is sold or transferred without the Lien Holder's prior written consent, the Lien Holder may, at its option, require immediate payment in full of all sums secured by the Lien Documents. However, the Lien Holder shall not exercise this option if federal law prohibits the exercise of such option as of the date of such sale or transfer. If the Lien Holder exercises this option, the Lien Holder shall give Property Owner notice of acceleration. The notice shall provide a period of not less than thirty (30) days – depending on state law and other requirements – from the date the notice is delivered or mailed within which all sums secured by the Lien Documents must be paid. If these sums are not paid prior to the expiration of this period, the Lien Holder may invoke any remedies permitted by the Lien Documents without further notice or demand on Property Owner.

  h.  As of the Modification Effective Date, a buyer of the Property will not be permitted, under any circumstance, to assume the Mortgage. In any event, this Agreement may not be assigned to, or assumed by, a buyer of the Property.

  i.  All payment amounts specified in this Agreement assume that payments will be made as scheduled.

